Case 5:20-cv-00212   Document 53   Filed on 10/19/22 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
October 19, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| FRANCISCO JASSO, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, § § § § | | |
| Plaintiffs, § § | | |
| V. § | CIVIL ACTION NO. 5:20-CV-212 | |
| § | | |
| HC CARRIERS, LLC., § § | | |
| Defendants. § | | |

**REPORT AND RECOMMENDATION**

Pending before the Court is the parties' Joint Motion for Approval of FLSA Settlement. (Dkt. No. 46). On April 6, 2022, all further dispositive matters were referred to the Court for findings of fact and recommendations of law. (Dkt. No. 40). After consideration of the parties' briefing, the record, and relevant applicable law, the Court will recommend that the parties' motion be **GRANTED**.

**I. Background**

Francisco Jasso[1] ("Plaintiff") filed this collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, on behalf of himself and similarly situated current and former employees against HC Carriers, LLC. ("Defendant"). (Dkt. Nos. 1 and 5). Plaintiff alleges that Defendant failed to pay him and other employees time and one-half their respective regular rates of pay for hours they worked beyond 40 hours a week. (*Id.* at 1, 4–5). Plaintiff seeks relief for the three years prior to the date of filing and forward in the form of all damages allowable under the FLSA, including back wages, liquidated damages, and attorney's fees and costs. (*Id.* at 8–9). Plaintiff also

---

[1] Although the named plaintiff in this suit was initially Gustavo Flores as per the Complaint filed on December 4, 2020, (Dkt. No. 1), a First Amended Complaint was filed on February 2, 2021, identifying Francisco Jasso as the named plaintiff, (Dkt. No. 4), with new service requested and issued. (*See* Dkt. No. 6). Gustavo Flores instead proceeds as a member of the group of settling employees as per his consent form. (Dkt. No. 4).

sought "an order conditionally certifying this case as an FLSA collective action and requiring notice to be issued to all putative collective action members," (*id.* at 9), defining the class as:

> All current and former employees of Defendant who were paid straight time hourly pay for all hours worked without receiving overtime premium pay for all hours worked over forty in each seven-day workweek for the time period beginning three years prior to the filing of this lawsuit through the date of the final disposition of this action.

(*Id.* at 7).

After engaging in preliminary discovery, Plaintiff filed a motion asking the Court to certify a 36-member class of similarly situated employees in order to give notice to and allow such employees to "opt in" to the ongoing suit. (Dkt. No. 35). Before the Court ruled on the motion, the parties filed an advisory notifying the Court that they had reached a settlement. (Dkt. No. 38). On April 6, 2022, all further dispositive matters were referred to this Court for findings of fact and recommendations of law by the Honorable United States District Judge Marina Garcia Marmolejo. (Dkt. No. 40). The Court then ordered the parties to file a motion to approve their settlement agreement, (Dkt. No. 44), and denied as moot the pending motion to certify the class. (Dkt. No. 45). The parties filed their Joint Motion for Approval of FLSA Settlement (the "Motion") on May 5, 2022. (Dkt. No. 46).

On May 24, 2022, the Undersigned held a hearing on the Motion. (Min. Entry May 24, 2022). Pursuant to the discussion at the hearing, Plaintiff file a corrected copy of the Settlement Agreement, as well as a supplemental brief in support of Plaintiff's requested attorney's fees, both of which the Court will now consider with the pending motion. (Dkt. Nos. 48, 49).

## II. Legal Standards

Under the FLSA, covered employees must be paid "at a rate not less than one and one-half times the regular rate at which [they are] employed" for a workweek over 40 hours. 29 U.S.C. § 207(a)(1). Any employer who violates this provision "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal

amount as liquidated damages." 29 U.S.C. § 216(b). However, FLSA claims may be compromised if the settlement is supervised by the Secretary of Labor or approved by a court. *Alden v. Black Gold Rental Tools, Inc.*, 2019 WL 6702693 at *1 (S.D. Tex. Nov. 21, 2019) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). A court may approve a settlement "in an employee FLSA suit [if it reflects] a reasonable compromise over issues . . . that are actually in dispute." *Lynn's Food Stores*, 679 F.2d at 1354. Ultimately, the Court must determine: "(1) whether a bona fide dispute exists between the parties; (2) whether the settlement agreement is a fair and reasonable resolution of the dispute; and (3) whether the requested attorney's fees are fair and reasonable." *Shaw v. CAS, Inc.*, 2018 WL 3621050, at *1 (S.D. Tex. Jan. 31, 2018). "The primary focus of [this] inquiry . . . is not, as it would be for a Rule 23 class action, on due process concerns . . . but rather on ensuring that an employer does not take advantage of its employees in settling their claim for wages." *Collins v. Sanderson*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008).

To find that there is a bona fide dispute between the parties, a court must determine whether the parties are sufficiently "adversarial" in order to ensure that an employer has not coerced their employees "into waiving their rights" guaranteed by the FLSA. *Shaw*, 2018 WL 3621050 at *1 (citation omitted). Indeed, "[i]f no question exists that the plaintiffs are entitled to the compensation they seek . . . then any settlement of such claims would allow the employer to negotiate around the statute's mandatory requirements." *Collins*, 568 F. Supp. 2d at 719. As for making this determination, the Fifth Circuit has held that "parties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due." *Bodle v. TXL Mortgage Corp.*, 788 F.3d 159, 163 (5th Cir. 2015) (quoting *Martin v. Spring Break '83 Productions*, 688 F.3d 247, 255 (5th Cir. 2012)).

After finding that there is a bona fide dispute between the parties, a court must then determine whether the substance of the settlement agreement is fair and reasonable. Although the class action provisions of Federal Rule of Civil Procedure 23 do not apply to collective actions under the FLSA, courts have looked to the case law under Rule 23 for relevant "analogous" analysis of settlement agreements. *Sims v. Housing Authority City of El Paso*, 2012 WL 10862119 at *3–4 (W.D. Tex. Feb. 29, 2012); *see Chano*

*et al. v. City of Corpus Christi*, 2019 WL 4247767 at *2–3 (S.D. Tex. July 7, 2019). Under a Rule 23(e) analysis, courts must determine whether a given settlement is "fair, adequate, and reasonable" by considering the following six factors helpful to the consideration of a settlement of FLSA claims:

> (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles [to] prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members.

*Chano*, 2019 WL 4247767 at *2–3 (citation omitted); *Shaw*, 2018 WL 3621050 at *2; *Collins*, 568 F. Supp. 2d at 721–22 (E.D. La. 2008).

### III. Approval of the Settlement Agreement

#### A. Approval of the Settlement Class

"Certification of a class for settlement purposes is useful in resolving major class action disputes." *Camp v. Progressive Corp.*, No. CIV.A. 01-2680, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207–10 (5th Cir. 1981); *In re Beef Indus., Antitrust Litig.*, 607 F.2d at 173–77 (5th Cir. 1979)). A settlement class must meet the requirements for class certification, just as if the case were to be litigated. *Amchem v. Windsor*, 521 U.S. 591, 620 (1997). To certify a class, the proponent "must first demonstrate that the proposed class meets the four threshold requirements specified in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation." *Izzio v. Century Golf Partners Mgmt., L.P.*, No. 3:14-CV-03194-M, 2019 WL 10589568, at *4 (N.D. Tex. Feb. 13, 2019), *aff'd*, 787 F. App'x 242 (5th Cir. 2019) (citing *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 345 (5th Cir. 2012)). The proponent must then demonstrate that the proposed class falls within one of the three categories specified in Rule 23(b). *Id*. Rule 23 applies to certification of FLSA settlement classes. *See Izzio v. Century Golf Partners Mgmt., L.P.*, 670 Fed. App'x. 348, 349 (5th Cir. 2016) (explaining in FLSA context that "Rule 23 governs whether a proposed class falls within the limited exception to the usual rule that

litigation is conducted by and on behalf of the individual named parties only.").

In their motion, the parties inform the Court that they stipulate and agree for purposes of the settlement that the settlement class as defined in Plaintiff's First Amended Complaint is proper, that these class members are similarly situated in all relevant respects under the FLSA, and urge the Court to approve certification of the settlement class. (Dkt. No. 46 at 3). Nevertheless, "[i]t is not enough that both sides may have stipulated to certification, because 'the court is bound to conduct its own thorough rule 23(a) inquiry.'" *Izzio*, 670 Fed. App'x. at 349–50 (quoting *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 n.7 (5th Cir. 2002)). This settlement class encompasses the 37 employees, including Plaintiff Jasso, who are listed in Exhibit B as appended to the docketed settlement agreement. (Dkt. No. 48 at 23). The Court's approval of a settlement class is a material term to the settlement agreement. (Dkt. No. 48 at 1).

The Court finds that certification of the class, solely for purposes of settlement, is appropriate in that: (a) the settlement class members are so numerous that joinder is impracticable; (b) there are questions of law and fact common to the settlement class which predominate over any individual questions; (c) the Plaintiff's claims are typical of the claims of the settlement class; (d) Plaintiff and Class Counsel have fairly and adequately represented and protected the interests of the settlement class; and (e) a class action settlement is superior to other available methods for the fair and efficient adjudication of the controversy. *See Frost v. Oil States Energy Servs.*, No. 4:15-CV-1100, 2015 WL 12780763, at *2 (S.D. Tex. Nov. 19, 2015).

Thus, having considered the record and the stipulation of the parties, the Court **RECOMMENDS** that the District Court **APPROVE** of the settlement class as the following:

> All current and former employees of Defendant who were paid straight time hourly pay for all hours worked without receiving overtime premium pay for all hours worked over forty in each seven-day workweek for the time period beginning three years prior to the filing of this lawsuit through the date of the final disposition of this action.

(Dkt. No. 5 at 7), to encompass the 37 individuals listed as Exhibit B to the settlement agreement, (Dkt. No. 48 at 23), and **APPROVE** the Notice of Settlement of Collective

Action Lawsuit Alleging Overtime Wages Against HC Carriers LLC, (Dkt. No. 48 at 17).

### B. Bona Fide Dispute

The Court must now consider whether there is a bona fide dispute between the parties. Based on the record in the instant action, the Court finds that there a bona fide dispute between the parties. The parties disagree, for instance, as to whether Plaintiff Jasso and collective action members are exempt from the overtime requirements of the FLSA pursuant to the Motor Carrier Act, 29 U.S.C. § 213(b)(17) ("any driver employed by an employer engaged in the business of operating taxicabs"), as evidenced by Defendant's answer. (Dkt. No. 8 at 9). This disagreement stems from the nature of the Plaintiff and the collective action members' work as vacuum truck drivers, (Dkt. No. 46 at 1), and/or wastewater transport business operators, (Dkt. No. 5 at 25). Inasmuch as the parties do not agree on whether Plaintiff and collective action members are exempt employees, they ultimately do not agree on whether these employees are due further compensation for hours they have worked over 40 hours per week. (Dkt. No. 46 at 4–5). Moreover, Defendant also denies Plaintiff's allegations as to the number of hours worked, (Dkt. No. 8 at 2, 4), and the compensation paid, (*id.* at 4–6). An actual dispute over "the amount of hours worked or compensation due" is sufficient to create a bona fide dispute. *Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608, 631 (W.D. Tex. 2005). Thus, based on this record, and the representations of counsel, the Court finds that there is a bona fide dispute between the parties.

### C. Fair and Reasonable Resolution

Next, upon examining the settlement agreement and applying the six factors from the Rule 23(e) context, the Court also finds that the compromise between the parties is fair and reasonable. The parties have filed the settlement agreement with the Court, (Dkt. No. 48), and as stated *supra*, the Court has held a hearing on the motion on the approval of settlement. (*See* Min. Entry May 24, 2022).

First, there is no evidence of fraud or collusion. "The Court may presume that no fraud or collusion occurred . . . in the absence of any evidence to the contrary." *Collins*, 568 F. Supp. 2d at 725. Moreover, the parties represent that their settlement agreement

was the product of "substantial arm's-length negotiations," with the assistance of "an experienced FLSA mediator." (Dkt. No. 46 at 2). Accordingly, the first factor weighs in favor of the settlement agreement.

Second, with regards to the complexity, expense, and likely duration of the litigation, Plaintiff filed a motion to certify the class, which, when including the exhibits attached to it, spans 186 pages. (Dkt. Nos. 35). Defendant had not yet filed its response before the parties began mediation and reached the settlement agreement in question. Moreover, the Court has already denied Plaintiff's motion to certify the class as moot. (Dkt. No. 45). Thus, a finding that the agreement is fair and reasonable would bring the litigation to a close and eliminate the need for the parties to invest additional time and resources litigating, *inter alia*, a potentially complicated certification question. Accordingly, the second factor also weighs in favor of the settlement agreement.

Third, the stage of the proceedings weighs in favor of approving the settlement because the parties have already engaged in informal and formal discovery. (Dkt. No. 46 at 2). "Sufficient discovery . . . ensure[s] the Court that counsel have enough information to evaluate the respective strengths and weaknesses of their case." *Chano*, 2019 WL 4247767 at *4. That, in turn, enhances the Court's confidence that the settlement agreed to by the parties is fair and reasonable. Accordingly, the third factor also weighs in favor of the settlement agreement.

Fourth, the factual and legal obstacles to Plaintiff and the absent class members prevailing on the merits of their FLSA claims do not obviously weigh in favor of the settlement agreement. As stated *supra*, one of Defendant's asserted defenses is that Plaintiff and the other members of this collective action may be exempt from the overtime requirements of the FLSA pursuant to the taxicab exemption of the Motor Carrier Act. 29 USC § 213(b)(17). While the Fifth Circuit has not interpreted the meaning of this provision, the Second Circuit has recently done so with abundant clarity. *See Munoz-Gonzalez v. D.L.C. Limousine Serv., Inc.*, 904 F.3d 208, 212–15 (2nd Cir. 2018). Based on that interpretation, a "taxicab" is "(1) a chauffeured passenger vehicle; (2) available for hire by individual members of the general public; (3) that has no fixed schedule, fixed route, or fixed termini." *Id*. at 214. Working with this definition of "taxicab," it is doubtful it could apply to vacuum truck drivers who transport wastewater, (Dkt. No. 35 at 5), such

as Plaintiff and the other members of this collective action. According to Plaintiff and class counsel, the applicability of the taxicab exemption is "potentially the only ultimate merits-based issue in this case." (*Id.* at 6). Without deciding whether that is true, it is nevertheless telling that Plaintiff and class counsel believe the only potential obstacle to their prevailing at trial is a provision of the Motor Carrier Act that, at least on the face of it, is wholly inapplicable to the facts of this case. This factor is by no means decisive, as Defendant's taxicab defense is merely one of many, and the outcome of litigation is hardly ever certain. In any event, the fourth factor, while not clearly weighing in favor of the settlement agreement, does not obviously weigh against it either.

Fifth, the range of possible recovery and the certainty of the damages weighs in favor of approving the settlement. The agreement awards gross relief in the amount of $248,515.20 to Plaintiff and the putative class, which is substantially more than Plaintiff's calculation of $163,832.80 in backpay due. (Dkt. No. 46 at 3). The net relief for Plaintiff and each putative class member, after subtracting 40% from the gross relief for attorney's fees, is still more than 85% of the back pay to which Plaintiff claims they are entitled. While this is only a portion of what Plaintiff and the putative class might receive if they prevailed at trial, "in light of the uncertainty of the outcome of the litigation, the settlement is reasonable." *Chano*, 2019 WL 4247767 at *4. Indeed, "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Collins*, 568 F. Supp. 2d at 720. Accordingly, the fifth factor weighs in favor of the settlement agreement.

Sixth, the respective opinions of the participants, including class counsel, Plaintiff, and the absent class members, also weigh in favor of approving the settlement agreement. Counsel for all parties represent that the settlement agreement is fair, reasonable, and in the interest of all parties. (Dkt. No. 46 at 5). Moreover, except for absent class members, all parties and their counsel signed the settlement agreement in question. (Dkt. No. 48 at 13–16). And finally, though the Court has no indication of the opinions of absent class members, if they do not opt in, they will not have waived their right to individually pursue claims against Defendant. Thus, the sixth factor weighs in favor of the settlement agreement.

Notwithstanding the preceding, under this sixth factor the Court must also

address the issue of the releases contained within the settlement agreement. General releases within an FLSA settlement as to collective action members are not acceptable as "this kind of general release absolves the employer of potential liability unrelated to the employee's FLSA claim in exchange for compensation which the employer was previously obligated to provide in exchange for the employee's labor." *Miller v. Bravura Info. Tech. Sys., Inc.*, No. 7:18-CV-00041, 2019 WL 12338331, at *2–3 (S.D. Tex. Aug. 16, 2019) (collecting cases). However, courts have approved of settlement agreements under the FLSA where a general release outside the scope of wage and hour claims are included as to the *named* plaintiff only. *See Davis v. Cap. One Home Loans, LLC., et al.*, No. 3:17-CV-3236 (N.D. Tex. June 2, 2020).

In the settlement agreement in the instant case, Plaintiff has been provided consideration separate from any money paid by Defendant for overtime hours, in recognition of his service as the named plaintiff in this case. (Dkt. No. 48 at 4–7). As such, he has also bargained away additional rights beyond the scope of the wage-hour claims release. The Court is comfortable with the scope of the general release signed by Plaintiff and the more limited release that will be applied to collective action members that opt-in to the settlement.

Based on this record, and the representations of counsel, the Court finds that the substance of the parties' settlement agreement is fair and reasonable.

### D. Attorney's Fees

Finally, the Court must determine whether the amount of attorney's fees awarded as part of the settlement agreement is reasonable. The settlement agreement specifies that "Class Counsel shall receive attorney's fees and expenses in an amount not to exceed $99,406.08, which is 40% of the Gross Settlement Amount, plus expenses in the amount of $2,766.00." (Dkt. No. 48 at 7). For the reasons that follow, the Court finds that the agreed-upon attorney's fee award of 40% of the gross settlement amount is reasonable.

The Fifth Circuit has recognized that, in cases which allocate a common fund to a settlement class, that courts have the flexibility to calculate—or approve the apportionment of—attorney's fees by using the lodestar method or the percentage

method. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (2012) ("We join the majority of circuits in allowing our district courts the flexibility to choose between the percentage and lodestar methods in common fund cases, with their analyses under either approach informed by the *Johnson* considerations."). When using the percentage method, the court must still decide whether the amount should be adjusted upward or downward by looking to twelve factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–18 (5th Cir. 1974).[2] *Id.*

Many district courts in the Fifth Circuit have approved attorney's fees amounting to 40% or more of the settlement amount in FLSA cases. *See, e.g.*, *Singer v. Wells Fargo Bank, N.A.*, No. 5:19-CV-00679, 2020 WL 10056302 at *2 (W.D. Tex. July 14, 2020); *Sarabia v. Spitzer Indus., Inc.*, No. 4:17-CV-2092, 2018 WL 6046327 at *4 (S.D. Tex. Nov. 11, 2018) (collecting cases). Accordingly, the Court considers the agreed-upon attorney's fee of 40% a reasonable benchmark, subject to possible upward or downward adjustment after application of the *Johnson* factors.

*Time and Labor Required.* This litigation began almost two years ago. As of June 1, 2022, class counsel represent that they spent approximately 225 hours working on this case. (Dkt. No. 49 at 4–5). Some 41 of those hours were a result of the Court's request that class counsel submit briefing on the impact of *Swales v. KLLM Transp. Servs., L.L.C.*, a Fifth Circuit opinion that was decided after litigation in this case had already begun. 985 F.3d 430 (5th Cir. 2021). (Dkt. No. 49 at 4). None of these facts suggests that the Court should adjust the benchmark upward or downward.

*Novelty, Difficulty, and Attorney Skill.* Plaintiff argues that, because it involved the potential applicability of a Motor Carrier Act exemption, this case was especially "thorn[y]" and "require[d] expertise to evaluate effectively." (*Id.* at 5). For reasons discussed in the Court's analysis of the fairness and reasonableness of the settlement, *supra*, the Court does not agree that the evaluation of the applicability of the taxicab

---

[2] The *Johnson* factors are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

exemption to the facts of this case was particularly difficult. However, Plaintiff also argues that collective action cases, like this one, tend to be more difficult simply by virtue of the number of plaintiffs. (*Id.* at 5–6). Plaintiff emphasizes that this is why he hired counsel with expertise in wage disputes and litigating collective actions. (*Id.* at 6). Ultimately, these considerations present no basis for an adjustment.

*Preclusion of Other Employment*. While some crowding out is inevitable, Plaintiff acknowledges that the effect of accepting this case was no more preclusive than the acceptance of any other case. Thus, no adjustment is warranted on this basis.

*Customary Fee and Awards in Similar Cases*. Plaintiff asserts that a contingency fee of 40% of the gross settlement amount in a common fund case is customary. (*Id.*). Indeed, Plaintiff has provided a string-citation of cases within the Fifth Circuit in which district courts approved of settlement agreements that awarded attorney's fees of 40% or more. (*Id.* at 2–3, 8). As such, no adjustment is warranted on the basis of what is customary or typical in similar cases.

*Fixed or Contingent Fee*. Here, class counsel entered into a contingency fee agreement with Plaintiff. (*Id.* at 6). That is to say, class counsel took on a substantial risk by agreeing to litigate this case because they incurred the upfront costs with no guarantee that their clients would ever receive an award from which they would take a cut. Thus, this factor supports the agreed-upon award of 40% of the gross settlement amount.

*Time Limitations Imposed by the Client*. Plaintiff acknowledges that class counsel faced no constraints of this sort. (*Id.* at 7). This factor has no effect on the award of attorney's fees.

*Amount Involved and Results Obtained*. The Court believes that the result obtained in the settlement agreement—a gross amount of $248,515.20—is a good outcome for Plaintiff and the class members. Plaintiff represents that the gross settlement figure is tantamount to full back pay plus more than half of the liquidated damages requested. (*Id.*). Of course, that gross figure is substantially reduced once 40% is removed for attorney's fees: $149,109.12.[3] (Dkt. No. 48 at 23). Nevertheless, under the terms of this settlement agreement, every class member will receive more than 85% of

---

[3] This figure is further reduced once class counsel's costs of $2,766 and Plaintiff's service award of $2,500 are deducted: $143,843.12. (Dkt. No. 48 at 7, 23).

their calculated back pay, and *relatively* quickly at that. Thus, this factor supports the agreed-upon award of attorney's fees.

*Experience, Reputation, and Ability of Attorney.* This factor also supports the agreed-upon award of attorney's fees. Class counsel consist entirely of FLSA specialists, one of whom is board certified in labor and employment law. (Dkt. Nos. 49 at 8 & 49-2 at 2). As such, no adjustment is merited on this ground.

*Undesirability of the Case.* Plaintiff avers that this case was a relatively undesirable FLSA case, again because of the possible applicability of an exemption from the Motor Carrier Act. (Dkt. No. 49 at 8). Once again, the Court disagrees that the *taxicab* exemption—29 U.S.C. § 213(b)(17)—had any significant likelihood of applying to the facts of this case. Ultimately the Court finds that this case is no more undesirable than any other collective action under the FLSA. "While cases may become less desirable to some degree as they increase in size and complexity, they also usually increase simultaneously in terms of potential reward on a contingency basis." *Batchelder v. Kerr-McGee Corp.*, 246 F. Supp. 2d 525, 533 (N.D. Miss. 2003). Thus, this factor provides no basis for an adjustment to the benchmark award of 40%.

*Nature and Length of Professional Relationship.* Class counsel's relationship with Plaintiff is limited to this particular representation. (Dkt. No. 49 at 8). This factor has no effect on the agreed-upon award of attorney's fee award.

Based on this record, and the representations of counsel, the Court finds that the agreed-upon award of attorney's fees in the amount of 40% of the gross settlement amount is reasonable. That figure is a reasonable benchmark, and the Court's consideration of the *Johnson* factors do not necessitate an upward or downward adjustment of that figure.

## IV. Conclusion

For the reasons set forth above, the Court **RECOMMENDS** that the District Court **GRANT** the Motion for Approval of Settlement of FLSA Claim, (Dkt. No. 46), approve the parties' settlement of this matter, and **DISMISS** the case with prejudice pursuant to the parties' settlement agreement.

**V. Notice of Right to Object**

Within 14 days after being served with a copy of this Report and Recommendation, the parties may file written objections to the findings and recommendations proposed above. 28 U.S.C. § 636(b)(1). The District Judge will review de novo those portions of the Report or specified proposed findings or recommendations to which the party objects. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996). The District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by this Court, and may also receive further evidence or recommit the matter to this Court with instructions. 28 U.S.C. § 636(b)(1)(C). The District Court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). If a party does not object within 14 days, the party forfeits its right to District Court review. *Thomas*, 474 U.S. at 150.

Failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after service shall bar an aggrieved party from de novo review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice. *Douglass*, 79 F.3d at 1428.

**SIGNED** on October 19, 2022.

_____
John A. Kazen
United States Magistrate Judge